UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LIBERTY HARBOR COFFEE INC., a/k/a
BREWSHOT, and NYNJ COFFEE2 LLC, a/k/a/
JERSEY SOCIAL,

                              Plaintiffs,

               -against-

MAGGIE MOSS and MOSS BUSINESS
CONSULTING, LLC,

                              Defendants.

---

Case No. 1:25-cv-01335 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Defendant Maggie Moss ("Moss") was at one time employed by Plaintiffs Liberty Harbor Coffee, Inc., a/k/a Brewshot ("Brewshot") and NYNJ COFFEE2 LLC, a/k/a Jersey Social ("Jersey Social" and, together with Brewshot, the "Plaintiffs"). The parties' dispute turns on the nature of that employment relationship and the circumstances and consequences of Moss's departure from it. Plaintiffs claim that Moss's departure constituted breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and tortious interference with a contract. Moss and her limited liability company, Moss Business Consulting, LLC ("Moss's LLC," and, together with Moss, "Defendants"), move to dismiss Plaintiffs' complaint on *forum non conveniens* grounds and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court DENIES Plaintiffs' motion to dismiss based on *forum non conveniens* and GRANTS the motion to dismiss for failure to state a claim.

## BACKGROUND[1]

### I.    Procedural History

Plaintiffs filed this action in New York State Supreme Court, New York County, on January 23, 2025.  *See generally* Dkt. 18-1 ("Compl.").  On February 14, 2025, Defendants removed it to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  Dkt. 1.  On March 14, 2025, Defendants moved to dismiss the Complaint, Dkt. 17.  In support of their motion, Defendants filed an accompanying Declaration of Peter D. Valenzano, Dkt. 18 (the "Valenzano Declaration"), and memorandum of law, Dkt. 19 ("Br.").  The Valenzano Declaration attaches a copy of the Complaint, *see* Dkt. 18-1, and four additional exhibits: a document purporting to be a copy of Moss's April 2023 independent contractor agreement with Brewshot, Dkt. 18-2; a document purporting to be a copy of Moss's April 2023 independent contractor agreement with Jersey Social, Dkt. 18-3; bank account information for Moss's LLC, Dkt. 18-4; and a screenshot of text messages between Moss and an employee of Jersey Social, Dkt. 18-5.  The Valenzano Declaration describes these four exhibits as "incorporated by reference in Plaintiffs' Complaint."  Valenzano Decl. ¶¶ 4-7.

On March 24, 2025, Plaintiffs moved to remand the matter to state court.  Dkts. 20-21.  As a result, the Court extended Plaintiffs' time to oppose Defendants' motion to dismiss until 14 days after the Court decided the remand motion.  The remand motion was fully briefed on May 12, 2025, Dkt. 33, and the Court denied it on May 23, 2025, *see generally Liberty Harbor Coffee, Inc. v. Moss*, No. 25-cv-01335 (JLR), 2025 WL 1488499 (S.D.N.Y. May 23,

---

[1] The facts stated in this section are drawn from the Complaint and from the Court's previous decision in this matter.  While courts may, on a motion to dismiss, additionally take facts from documents incorporated by reference in or integral to a complaint, here the Court finds — for reasons discussed later in this Opinion — that there are no such additional documents for the Court to consider.

2025).  With that resolved, the parties' motion to dismiss briefing schedule resumed.

Plaintiffs filed their opposition brief on June 5, 2025, Dkt. 38 ("Opp."), and Defendants filed

their reply on June 12, 2025, Dkt. 39 ("Reply").  Accordingly, the motion is fully briefed.[2]

## II.    Relevant Facts

Brewshot is a coffee shop and corporation incorporated in New Jersey, with its

principal place of business in New Jersey.  Compl. ¶ 1.  Jersey Social is a sports bar in Jersey

City, New Jersey.  Compl. ¶ 2.  It is also an LLC with both New Jersey and New York

citizenship.  *Liberty Harbor*, 2025 WL 1488499, at *2-3.  Both Brewshot and Jersey Social

are owned by the same person, Mr. Arun Nanda ("Nanda").  Compl. ¶¶ 2, 5-6, 15.

In or about November 2022, Moss began "to work as a part-time consultant for Jersey

Social."  Compl. ¶ 14.  Plaintiffs do not explain what that role entailed, but they allege that, at

some point while Moss held it, she told Nanda "that she was quitting her other employment

and wanted to consult full-time for both Brewshot and Jersey Social."  Compl. ¶ 17.

Amenable to that idea, Nanda "initially agreed to bring . . . Moss on board as [an] independent

contractor."  Compl. ¶ 18.  Accordingly, on April 20, 2023, Moss sent Nanda "two

agreements, one for Jersey Social and one for Brewshot . . . ."  Compl. ¶ 19.  Plaintiffs allege

that Nanda signed both agreements on Plaintiffs' behalf and returned them to Moss.

Compl. ¶ 19.  Plaintiffs do not allege whether, or when, Moss counter-signed the agreements.

They also do not allege the parameters of the independent contractor role.

---

[2] Defendants requested oral argument in their notice of motion.  *See* Dkt. 17 at 2.  The Court declines this request because the parties' briefing was sufficient, and oral argument would not materially assist the Court.  *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

In April 2023, Moss "also started managing Brewshot."  Compl. ¶ 20.  One to two months later, in June 2023, Brewshot and Moss "discussed" making Moss "an equity shareholder of Brewshot instead of manager," because at the time "Brewshot was not profitable" and could not afford to pay her.  Compl. ¶ 21.  After "[a] few days" and some further discussion, Brewshot and Moss "orally agreed that . . . Moss would provide a series of services to Brewshot, including, among others, management, marketing and branding," and that in return Moss would receive "5% equity interest in Brewshot."  Compl. ¶¶ 23-24.  Moss requested, and Brewshot agreed to provide her with, an "advance against her equity distributions," and Brewshot and Moss agreed that she would repay this advance to Brewshot once the company "bec[a]me[] profitable."  Compl. ¶¶ 25, 28.  Brewshot and Moss also agreed that the existing independent contractor agreement "relating to Brewshot" was no longer valid.  Compl. ¶ 26.  Plaintiffs do not allege that the independent contractor agreement between Moss and Jersey Social was impacted.

The Complaint does not state precisely when this oral agreement occurred, who from Brewshot was speaking with Moss, whether the conversation was by telephone or in person, or where the conversation took place.  At some point after that agreement, and in keeping with its terms, Brewshot (through Nanda) took "tens of thousands of dollars in loans from another entity" and transferred that money to Moss's LLC as an advance.  Compl. ¶¶ 30-31.  The Complaint does not state the specific amount of money Brewshot paid to Moss.  At the same time Nanda took out those loans, Brewshot also "engaged several investors in the United States and in India, hired coffee connoisseurs, hired business consultant[s], [and] prepared business plans and presentation deck[s] for potential investors."  Compl. ¶ 27.

Approximately one year later, on or about June 19, 2024, Moss left "to go to school in Colorado," without having "provide[d] the agreed upon service[s] or reimburs[ed] Brewshot

for the advance." Compl. ¶¶ 32-33.  Brewshot does not allege that it had "become[]
profitable" by the time of Moss's departure, Compl. ¶ 28, nor does it delineate the services
Moss allegedly failed to provide.  However, Jersey Social alleges that when Moss departed
she attempted to "destroy Jersey Social" by "encouraging [its] employees to walk away from
their contractual obligations."  Compl. ¶¶ 34, 37.  Moss allegedly offered to "unjustifiably
fire" Jersey Social's employees so that they could "collect unemployment insurance benefits"
at Jersey Social's expense.  Compl. ¶ 38.  At Moss's behest, "[s]ome employees" of Jersey
Social "resigned and/or were terminated."  Compl. ¶ 39.

## LEGAL STANDARD

A plaintiff's "complaint may be dismissed to the extent that it 'fail[s] to state a claim
on which relief can be granted." *DiFolco v. MSNBC Cable L.L.C.*, 622 F. 3d 104, 110 (2d
Cir. 2010) (quoting Fed. R. Civ. P. 12(b)(6)) (alteration in original).  On a motion seeking
such dismissal, the Court "accepts all factual allegations in the complaint as true and draws all
reasonable inferences in the plaintiff's favor." *Santos v. Medina*, 417 F. Supp. 3d 280, 285
(S.D.N.Y. 2019).  However, the Court need not accept "conclusory allegations or legal
conclusions masquerading as factual conclusions . . . ." *Rolon v. Henneman*, 517 F.3d 140,
149 (2d Cir. 2008) (Sotomayor, J.) (citation omitted).  Rather, to survive a motion to dismiss,
"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, the complaint must contain "more than
labels and conclusions," and must not be a "formulaic recitation of the elements of a cause of
action." *Twombly*, 550 U.S. at 555.

Under the common law doctrine of *forum non conveniens*, a district court may "in rare
instances . . . dismiss a claim even if the court is a permissible venue with proper jurisdiction

over [it]," *Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 657 (S.D.N.Y. 2020), "so

that the case may be heard in a more convenient . . . forum," *Marchante v. Reuters America*

*LLC*, 736 F. Supp. 3d 209, 214 (S.D.N.Y. 2024).  "The grant or denial of a motion to dismiss

for *forum non conveniens* is generally committed to the district court's discretion."  *Wiwa v.*

*Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000).  However, where a plaintiff

chooses to litigate in its home forum, "it is reasonable to assume that choice is convenient"

unless the "chosen forum would be unnecessarily burdensome for the defendant . . . ."  *See*

*Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 145 (2d Cir. 2022) (quoting *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).

## DISCUSSION

### I.    Documents Outside the Complaint

As a threshold matter, Defendants submit four documents with their motion to dismiss

on the theory that they are incorporated by reference in or integral the Complaint: the

independent contractor agreement between Moss and Brewshot, the independent contractor

agreement between Moss and Jersey Social, Moss's LLC's bank records, and a text message

exchange between Moss and a Jersey Social employee.  *See* Valenzano Decl. ¶¶ 4-7, Dkts. 18-

4–18-7.  Plaintiffs dispute that the two agreements are incorporated by reference in the

Complaint, Opp. at 2-3, but they make no arguments concerning the bank records or text

message.  The Court finds that none of the four documents is incorporated by reference in or

integral to the Complaint.

On a motion to dismiss, "[a] complaint is deemed to include any written instrument

attached to it as an exhibit, materials incorporated in it by reference, and documents that,

although not incorporated by reference, are 'integral' to the complaint."  *Sierra Club v. Con-*

*Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647

F.3d 419, 422 (2d Cir. 2011)).  Documents are generally considered incorporated by reference "where (1) the plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 397 (S.D.N.Y. 2023) (quoting *Steward v. Riviana Foods Inc.*, No. 16-cv-06157 (NSR), 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2007)) (alteration adopted).  Documents are considered integral to a complaint when the plaintiff "relies heavily upon [their] terms and effect . . . in drafting the complaint." *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 244 (S.D.N.Y. 2024) (internal quotations and citations omitted).  Thus a plaintiff's "mere notice or possession" of the documents does not alone establish their integrality to the complaint — rather, the plaintiff's "reliance" on those documents is "a necessary prerequisite to the court's consideration of [them] on a dismissal motion . . . ." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

To begin, the Court finds that the two written agreements are not incorporated by reference in or integral to the Complaint.  Plaintiffs did not rely on, or clearly and substantially reference, these agreements in the Complaint.  In fact, the Complaint only twice mentions the agreements, first noting that the parties entered into them, Compl. ¶ 19, and then noting that the parties' subsequent oral contract extinguished one of them, Compl. ¶ 26.  The Complaint does not quote from the agreements or mention any of their terms, let alone rely on those terms.  As Plaintiffs point out, their claims in this action "are not premised on those unexecuted written agreements" at all, but rather on the alleged breach of a subsequent alleged oral agreement between Moss and Brewshot.  Opp. at 3.  Thus, the Court finds that Plaintiffs have not relied sufficiently on the agreements to permit the Court to consider them on Defendants' motion to dismiss. *See, e.g.*, *Moore*, 722 F. Supp. 3d at 249 (plaintiff's collective

bargaining agreement not incorporated by reference where plaintiff made only "minor reference to union membership" in complaint); *Lateral Recovery, LLC v. Cap. Merchant Servs., LLC.*, 632 F. Supp. 3d 402, 429 n.11 (S.D.N.Y. 2022) (written agreement not incorporated by reference or integral to complaint where complaint "alleges no details of that transaction and [p]laintiffs do not base their claims on that transaction"); *cf. Wen v. N.Y. City Regional Center, LLC*, 695 F. Supp. 3d 517, 534 (S.D.N.Y. 2023) (incorporating offering memoranda by reference where complaint "dedicate[s] paragraphs to detailing their contents," and where misrepresentations in the memoranda "form the very foundation" of plaintiffs' claim); *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (disciplinary hearing report not incorporated by reference where complaint "refers briefly in one paragraph to the disciplinary hearing," but integral where plaintiff's claims concern same conduct for which defendant faced disciplinary hearing).

The Court takes a similar view of Moss's LLC's bank records and the purported text exchange between Moss and a Jersey Social employee, Zach Paz. *See* Dkts. 18-4, 18-5; *see also* Valenzano Decl. ¶¶ 6-7. Plaintiffs did not refer expressly or even implicitly to Moss's LLC's bank records or rely upon those records in framing its Complaint; the Complaint merely states that Brewshot advanced Moss's equity distributions to Moss's LLC in accordance with the parties' alleged oral agreement. *See* Compl. ¶¶ 25-32; *cf. Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-cv-00847 (RWS), 2012 WL 4335164, at * n. 1 (S.D.N.Y. Sept. 21, 2012) (incorporating invoices by reference where "complaint expressly refers" to them). And while the Complaint alleges that Moss encouraged various Jersey Social employees to leave their jobs, it names only one such employee: Gabriella Giordano. Compl. ¶¶ 34-39. The Complaint does not refer to the employee in the text chain, Zach Paz; does not refer to or rely upon a conversation between Moss and Paz; and does not refer to or

rely upon any text conversation between Moss and any Jersey Social employee.  *See Vogel v. TakeOne Network Corp.*, No. 22-cv-03991 (ER), 2023 WL 5276857, at *3-4 (S.D.N.Y. Aug. 16, 2023) (transcript of phone call between plaintiff and third party not incorporated by reference where plaintiff "ma[de] no reference whatsoever in the complaint" to phone call occurring on that date); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (documents not incorporated by reference where complaint "makes no explicit or implicit reference to, nor does it quote at all from," those documents).  As a result, the bank records and the text message are not incorporated by reference in or integral to the Complaint.

Because the Court finds that all four of these documents attached to the Valenzano Declaration are not incorporated by reference in or integral to the Complaint, the Court cannot consider any of them on this motion to dismiss without converting the motion to one for summary judgment.  *See Global Network Cmmc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006) (finding that district court committed reversible error by relying on non-incorporated, non-integral documents on motion to dismiss not converted to summary judgment motion); *accord Nexamp, Inc. v. Consolidated Edison, Inc.*, No. 24-cv-01502 (JGLC), 2025 WL 936636, at *3 (S.D.N.Y. March 25, 2025).  Neither party has requested such a conversion.  Accordingly, in deciding Defendants' motion to dismiss, the Court disregards entirely the two written agreements, Moss's LLC's bank records, the text message exchange, and any arguments relating to or relying on them.

## II.    *Forum Non Conveniens* **Motion**

Defendants first move to dismiss this action based on *forum non conveniens*. Defendants appear to ground this motion within the framework of CPLR 327(a), *see* Br. at 16, which provides that "[w]hen the court finds that in the interest of substantial justice, the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss

the action in whole or in part on any conditions that may be just," N.Y. CPLR 327(a).

Defendants also set forth the following factors that courts should consider in connection with

that analysis: "(1) the residency of the parties and convenience of potential witnesses; (2) the

location where the actionable events took place; (3) the location of evidence; (4) the

availability of an alternative forum; and (5) [t]he burden on the New York court if the case is

retained." Br. at 16. Thus, Defendants argue that the Court "must dismiss this action in favor

of the more convenient and applicable forum of New Jersey," because Plaintiffs "are

domiciled in New Jersey, the alleged actions took place in New Jersey, the bulk of discovery

will include New Jersey locations and New Jersey residents, Defendant Moss filed an action

against Plaintiffs in New Jersey [] prior to the filing of [this] action," and the two written

agreements contain a choice of law provision stating that New Jersey law governs them. Br.

at 17 (emphasis omitted); *see* Br. at 15-16; Reply at 14-16.

CPLR 327(a) is not applicable here. *See Guo v. Perry*, No. 23-cv-00119 (DEH) (SN),

2024 WL 5508500, at *4 (S.D.N.Y. Oct. 25, 2024) (holding that CPLR 327(a) "is relevant

only in state court proceedings to dismiss or stay state court actions if it is in the interest of

substantial justice," and "the federal *forum non conveniens* analysis guides this [c]ourt's

decision to dismiss, not N.Y. CPLR 327(a) (quotation marks and citation omitted)), *report

and recommendation adopted*, 2025 WL 1047374 (S.D.N.Y. Apr. 8, 2025). And while the

factors that Defendants provide are relevant, the applicable standard requires the Court to

consider more. On a motion to dismiss for *forum non conveniens*, the Court must "(1)

determine the degree of deference properly accorded the plaintiff's choice of forum; (2)

consider whether the alternative forum proposed by the defendants is adequate to adjudicate

the parties' dispute; and (3) balance the private and public interests implicated in the choice of

forum." *Celestin*, 30 F.4th at 145 (alterations adopted and internal quotation marks omitted)

(quoting *Norex Petroleum Ltd. v. Access Indus.*, *Inc*., 416 F.3d 146, 153 (2d Cir. 2005).

As to the first step of this analysis, "[a]s a general matter, courts defer to a plaintiff's

choice of forum," *Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 657 (S.D.N.Y.

2020), especially "[w]hen the plaintiff's choice is . . . its home forum," *Sinochem Int'l Co. v.*

*Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *see Celestin*, 30 F.4th at 145

("[W]hen the home forum has been chosen, it is reasonable to assume that this choice is

convenient." (quoting *Piper Aircraft*, 454 U.S. at 255-56)).  Indeed, "[a] defendant

invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's

chosen forum," *Miller-Rich v. Altum Pharms. Inc.*, No. 22-cv-03473 (JLR), 2023 WL

8187875, at *8 (S.D.N.Y. Nov. 27, 2023) (quoting *Sinochem*, 549 U.S. at 430).  To be sure,

courts may still defer to a plaintiff's decision to sue outside its home forum; in that situation,

the analysis turns on "a plaintiff's likely motivations in light of all the relevant indications."

*Iragorri v. United Techs Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc).  Where the parties

are bound by a valid forum-selection clause, however, a court's deference to the plaintiff's

choice typically "gives way to a presumption in favor of the contractually selected forum."

*Miller-Rich*, 2023 WL 8187875, at *8 (quoting *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir.

2019).

Here, New York is not Plaintiff Brewshot's home forum, but it is Jersey Social's.  *See*

Compl. ¶ 1 (Brewshot is citizen of New Jersey); *Liberty Harbor*, 2025 WL 1488499, at *3

(Jersey Social is citizen of New Jersey and New York).  Given that one of the two Plaintiffs

here is a citizen of New York, there is no basis for this Court to withhold deference to

Plaintiffs' choice of forum in New York.  *Cf. Wamai v. Indus. Bank of Korea*, No. 21-1956,

2023 WL 2395675, at *2 (2d Cir. Mar. 8, 2023) (summary order) (holding that district court

did not abuse discretion in withholding deference where "83% of the plaintiffs reside outside the United States"); *see id.* at *2 n.1 (collecting cases and noting that "[w]e have repeatedly affirmed district courts' application of less deference to the plaintiffs' choice of forum in the *forum non conveniens* analysis where the . . . resident plaintiffs[] [in the] lawsuit are outnumbered by non-resident plaintiffs").

Moreover, the "relevant indications" do not suggest that Plaintiffs chose New York over New Jersey for "forum-shopping reasons." *Iragorri*, 274 F.3d at 72. At the time of filing, Plaintiffs alleged that, "at all times" relevant to the Complaint, Moss was a citizen of New York, Compl. ¶ 7, and in their remand motion before this Court they argued that Moss remained domiciled in New York despite her relocation to Colorado, *Liberty Harbor*, 2025 WL 1488499, at *3 (contending that "Moss is only a 'temporary resident[ ]' and not a domiciliary of the state of Colorado" (citation omitted)). That suggests Plaintiffs initiated this action against Moss in New York for the simple reason that they believed her to be domiciled there. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 592 U.S. 351, 385-59 (2021) ("[A]n individual is subject to general jurisdiction in her place of domicile," and general jurisdiction "need not relate to the forum State or the defendant's activity there"); *see also Iragorri*, 274 F.3d at 72-73 (theorizing that "[i]t would make little sense to withhold deference" where a plaintiff "brought suit in the Southern District of New York . . . because the defendant was amenable to suit [there] but not in New Jersey"). Such facts do not indicate forum shopping.

To be sure, Defendants allege that Plaintiffs filed this action in New York to retaliate against Moss for having sued them in New Jersey, and they contend that Plaintiffs should have brought these claims as counterclaims in Moss's New Jersey action. Br. at 1-3; Reply at 1-2. But Defendants provide no information indicating that Plaintiffs' choice of *jurisdiction*

advances that allegedly sinister purpose.  As Defendants themselves concede, Br. at 8 n.2, 10 n.4, 14 n.6; Reply at 8 n.3, 10 n.4, 13 n.5, there is no substantive difference between New York and New Jersey law on any of Plaintiffs' claims, and Defendants have not argued that the claims are required to be brought in the New Jersey lawsuit as counterclaims.  Moreover, Defendants do not even reside in New Jersey; they are in Colorado and do not argue here that Colorado is the more convenient forum.  *See, e.g.*, *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 167, 182 (E.D.N.Y. 2015) (holding that requiring defendant to "[l]itigat[e] this case in New York will impose no more burden on [defendant] than litigating in another forum (for example, New Jersey) away from its [Minnesota] home office").  Similarly, although Defendants allege that Plaintiffs' purpose in filing this action in New York was to "intimidate . . . Moss into withdrawing [her New Jersey action] and to subject her to the burden of defending against spurious claims," Br. at 2, Defendants would have had to defend against the same claims if Plaintiffs had filed them in New Jersey, or raised them as counterclaims in Moss's suit.

In sum, Defendants have not carried their "heavy burden" to overcome this Court's deference to Plaintiffs' choice in forum.  *Miller-Rich*, 2023 WL 8187875, at *8.  While that deference would "give[] way" to a forum-selection clause, *id.*, there is no such operable clause here.  Defendants point to Moss's written agreements with Plaintiffs, Br. at 16; Reply at 14-15, but the Court has disregarded those agreements; moreover, those agreements do not contain a forum-selection clause and, instead, only reference applicable law — law that this Court could apply as well.  *See Njoku v. New Jersey Inst. of Tech.*, No. 93-cv-06681 (RLC), 1994 WL 577734, at *3 (S.D.N.Y. Oct. 19, 1994) ("[F]ederal judges routinely interpret state laws in diversity cases, and 'applying the law of another jurisdiction within the United States poses no particular problem to any federal forum'" (citation omitted)); *Ultimate*

*Nutrition, Inc. v Leprino Foods Co.*, 707 F. Supp. 3d 199, 213 (D. Conn. 2023) ("[R]egardless of whether Connecticut or Colorado law applies, this case is unlikely to involve particularly complex or novel questions of state law, and this court is capable of applying the substantive law of another state."). Therefore, on the first step of the *forum non conveniens* analysis, the Court finds that it owes deference to Plaintiffs' choice in forum: New York.

As to the second step, it appears that New Jersey is also an adequate forum for Plaintiffs' claims. As Defendants note, Brewshot (the coffee shop) and Jersey Social (the sports bar) are located in New Jersey, the alleged oral agreement at issue concerns Moss's work for those businesses, and there is a pending lawsuit between the parties in New Jersey. Br. at 17; Reply at 15; *see generally* Compl.

Finally, at the third step, the Court balances the private and public interests implicated in the choice of forum. *See Celestin*, 30 F.4th at 145. The Second Circuit has explained that private factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74 (citation omitted). Public factors include "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 395 (S.D.N.Y. 2010) (quoting *DiRienzo v. Philli Servs. Corp.*, 294 F.3d 21, 31 (2d Cir. 2002)).

Balancing these factors and the interests they represent, the Court finds that even though New Jersey is an adequate alternative forum, there is insufficient reason to dismiss this

action in favor of it.  Defendants argue that "the bulk of discovery will include New Jersey locations and New Jersey residents," Br. at 17, but, as discussed, New York and New Jersey are close enough geographically to minimize any inconvenience that would create, and Defendants do not otherwise explain why New York is an inconvenient forum compared to New Jersey.  *See Spirgel v. Henry H. Ackerman & Co.*, 633 N.Y.S.2d 144, 145 (App. Div. 1995) ("While New Jersey would be a suitable alternative forum, Paramus[,] [New Jersey] is hardly so distant as to make travel to a Manhattan courthouse an inconvenience.").  Moreover, Jersey Social is a New York citizen, *Liberty Harbor*, 2025 WL 1488499, at *3; this case involves no difficult conflict of law problems because, as explained below, the Court will be applying New York law; and there is no indication that New Jersey courts are less congested than this Court.  For all these reasons, the Court denies Defendants' request to dismiss the Complaint on *forum non conveniens* grounds.

In support of their *forum non conveniens* argument, Defendants also contend that New Jersey law applies to Plaintiffs' claims.  *See, e.g.*, Br. at 15 (stating that New York courts honor parties' "manifested intentions to have an agreement governed by the law of a particular jurisdiction" (citation omitted)); *id.* at 16 (characterizing the independent contractor agreements as "the contracts at issue" and stating that they provide for the application of New Jersey law).  The Court disagrees.

As discussed previously, the Court is disregarding the independent contractor agreements here, and therefore their terms do not control.  This action also does not arise out of those agreements: it is based on a purported oral agreement.  Moreover, the choice of law provisions in the written agreements expressly apply only to the written agreements themselves, *see* Br. at 16 ("**Applicable Law.** *This Agreement* shall be governed by the laws of the State of New Jersey") (capitalization omitted) (italics added)), rather than to disputes

arising out of, or related to, or in connection with, those agreements.  *Cf. TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 378 (S.D.N.Y. 2010) (collecting cases, and explaining that the Second Circuit interprets forum selection clauses broadly when they contain language such as "arising 'in connection with' a set of contracts" or "'arising directly or indirectly from' a franchise agreement" (first quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993); and then quoting *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720-21 (2d Cir. 1982))).  Finally, Defendants concede that there is no conflict between New York and New Jersey law on any of Plaintiff's claims, Br. at 8 n.2, 10 n.4, 14 n.6; Reply at 8 n.3, 10 n.4, 13 n.5, and the parties rely exclusively on New York law in their papers.  Therefore, the Court will apply New York law.  *See First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 633 (S.D.N.Y. 2014) ("Where there is no actual conflict, a choice-of-law analysis is unnecessary and New York law will apply."); *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (holding that where "[t]he parties' briefs assume that New York substantive law governs the issues," "such implied consent is . . . sufficient to establish the applicable choice of law").

Therefore, the Court denies Defendants' request to dismiss the Complaint on *forum non conveniens* grounds and will apply New York law in examining the claims.

## III.    Breach of Contract

Moving next to Defendants' motion to dismiss for failure to state a claim, the Court will first examine Brewshot's breach of contract claim.  To survive a motion to dismiss, a plaintiff claiming breach of a written or oral contract must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Exchange Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 144 (S.D.N.Y.

2023); *see Anders v. Verizon Commc'ns Inc.*, No. 16-cv-05654 (VSB), 2018 WL 2727883, at

*8 (S.D.N.Y. June 5, 2018) ("[O]ral contracts are 'as enforceable as . . . written one[s]."

(quoting *Charles Hyan, Inc. v. Olsen Indus., Inc.*, 642 N.Y.S.2d 306, 309 (App. Div. 1996))).

      As to the first requirement, "[a] valid contract requires 'an offer, acceptance,

consideration, mutual assent, and an intent to be bound." *Rowe Plastic Surgery of N.J., L.L.C.*

*v. Aetna Life Ins. Co.*, No. 32-8083, 2024 WL 4315128, at *2 (2d Cir. Sept. 27, 2024)

(summary order) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).

Although "not all terms of a contract need to be fixed with absolute certainty," and "[a]t some

point virtually every agreement can be said to have a degree of indefiniteness," *Tractebel*

*Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (first quoting

*Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 715 N.E.2d 1050, 1053

(N.Y. 1999); and then quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 548

N.E.2d 203, 206 (N.Y. 1989)), the parties' mutual assent must still be "sufficiently definite to

assure that the parties are truly in agreement with respect to all material terms." *Express*

*Indus.*, 715 N.E.2d at 1053. "[T]he burden of establishing the terms of [a] verbal contract"

rests with the party seeking to enforce it, and "for all but the simplest of transactions . . . ,

[this] presents a formidable obstacle." *Anders*, 2018 WL 2727883, at *8 (quoting *Charles*

*Hyman, Inc. v. Olsen Indus., Inc.*, 642 N.Y.S.2d 306, 309 (App. Div. 1996). Nevertheless,

"[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement

cannot be rendered reasonably certain by reference to an extrinsic standard that makes its

meaning clear." *National Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 544 (S.D.N.Y.

2006) (quoting *Cobble Hill*, 548 N.E.2d at 206).

      Defendants first argue that any oral agreement Moss may have entered into with

Brewshot is void under the Statute of Frauds because of "the extensive time frame required

for Brewshot to become profitable — likely more than a year."  Br. 7-8; *see* Reply 3-4

(describing Brewshot's profitability as "a distant, open-ended goal which was well beyond a

one-year horizon").  That argument, to which Plaintiffs offer no response, misunderstands the

Statute of Frauds.

      In New York, the "Statute of Frauds renders 'void' any oral contract that '[b]y its

terms is not to be performed within one year from the making thereof or the performance of

which is not to be completed before the end of a lifetime.'"  *Almeciga v. Ctr. for Investigative*

*Reporting, Inc.*, 185 F. Supp. 3d 401, 409 (S.D.N.Y. 2016) (quoting N.Y. Gen. Oblig. Law §

5-701(a)(1)).  Contrary to Defendants' suggestion, the Statute of Frauds does not include

agreements that might not be performed within one year, or those that seem unlikely to be

performed within one year, or even those that, "as a practical matter, . . . [are] well nigh

impossible of performance within a year," *Shirley Polykoff Adv. v. Houbigant, Inc.*, 374

N.E.2d 625, 626 (1978); *see Chung v. J.H. Whitney Cap. Partners, LLC*, No. 24-cv-05864

(PAE), 2025 WL 1184722, at *3 (S.D.N.Y. April 23, 2025) ("However 'unlikely' it may be

that the agreement would have been fully performed within a year, 'the Statute of Frauds does

not turn on probabilities.'" (quoting *Hallett v. Stuart Dean Co.*, 517 F. Supp. 3d 260, 285

(S.D.N.Y. 2021))).  Rather, it "encompasses only those contracts which, by their terms, have

absolutely no possibility in fact and law of full performance within one year."  *Optionality*

*Consulting Pte. Ltd. v. Nekos*, No. 18-cv-05393 (ALC), 2019 WL 4523469, at *7 (S.D.N.Y.

Sept. 18, 2019) (quoting *Cron v. Hargro Fabrics, Inc.*, 694 N.E.2d 56, 58 (1998)).

      The alleged agreement here does not fit that description, because none of its terms

made it impossible for Brewshot to become profitable, and for Moss to repay what she owed

to Brewshot, within one year.  *See Alsayer v. OmniX Labs, Inc.*, No. 25-cv-02628 (LJL), 2025

WL 100899, at *12 (S.D.N.Y. Jan. 15, 2025) (collecting cases, and holding that defendant's

promise to repay loan was performable within one year even though loan matured after two years, because "[a]t any time, [defendant] could have simply returned the loan funds . . .[,] [which] would have constituted full performance"); *see also JNG Const., Ltd. v. Roussopoulos*, 22 N.Y.S.3d 567, 567-68 (App. Div. 2016) (holding that oral agreement to repay loan "was capable of being performed within one year of its making" where agreement was entered into in 1998 and loan matured in 2013).  With the correct standard in mind, Defendants' conclusory assertions that an "extensive time frame [was] required for Brewshot to become profitable," and that this timeframe was "likely more than a year," Br. 8, are unavailing.  The sole case Defendants cite on the Statute of Frauds, *Weisse v. Engelhard Minerals & Chemicals Corp.*, Br. at 7; Reply at 4, does not support their position.  In *Weisse*, the court found that an employer's oral agreement in 1975 to pay bonuses to an employee in 1976 and 1977 was void under Statute of Frauds because the second promised payment would, by the contract's own terms, have to be made "more than one year from the making of the contract."  *Weisse v. Engelhard Minerals & Chems. Corp.*, 571 F.2d 117, 118-19 (2d Cir. 1978).  The alleged oral contract here, by its terms, would not necessarily last more than one year.

Defendants next argue that the Complaint omits "critical elements" of the alleged agreement between the parties, "render[ing] [the agreement] unenforceable."  Br. at 8.  Specifically, Defendants contend that the agreement fatally omits "(1) the amount of money to be advanced to Defendants; (2) the criteria determining when Plaintiff Brewshot would become profitable, especially considering that Brewshot was an already established business; (3) the specific roles and responsibilities of each party under the agreement; and (4) the terms of repayment."  Br. at 8.  Plaintiffs counter that Brewshot has adequately pleaded the existence of an agreement by alleging that the parties agreed "Moss would provide services in

19

exchange for a 5% equity interest in Brewshot," and that Moss would receive "an advance against future equity distributions . . . [,] [to] be reimbursed when Brewshot became profitable."  Opp. at 2; *see also* Compl. ¶ 24 (alleging Moss agreed to provide services "including, among others, management, marketing and branding"), ¶ 44 (alleging Moss agreed to provide "certain services such as marketing and branding").  Here, the Court agrees with Defendants.  The Court finds that the terms of the alleged agreement, accepted as true and with all reasonable inferences in Plaintiffs' favor, are too indefinite to plead the existence of an agreement.

The terms of the alleged agreement are particularly indefinite as they pertain to the services Moss agreed to perform for Brewshot.  Moss's obligations purportedly included "management, marketing and branding" services, but Plaintiffs allege that these are mere examples of a broader, otherwise undefined "series of services" Moss promised to provide.  *See* Compl. ¶ 24 (alleging Moss agreed to "provide *a series* of services to Brewshot, *including, among others*, management, marketing and branding) (emphasis added); Compl. ¶ 44 (alleging Moss agreed to "provide *certain* services *such as* marketing and branding for Brewshot") (emphasis added).  Plaintiffs do not adequately allege the existence of an oral agreement by pointing to Moss's promise to provide an undefined "series of services."  *See Krolick v. Sloane*, No. 17-cv-0881 (RA), 2021 WL 5280990, at *3-5 (S.D.N.Y. Nov. 12, 2021) (finding existence of oral agreement inadequately pleaded where plaintiff allegedly promised to "provide his services" to assist defendant corporation in franchise acquisition); *DeSilva v. North Shore-Long Island Jewish Health Sys.*, No. 10-cv-0748760 (JFB) (ETB), 2012 WL 748760, at *8 (E.D.N.Y. Mar. 7, 2012) (finding existence of oral agreement inadequately pleaded where plaintiffs alleged they had promised to provide "labor and services" to defendants, including certain undefined "tasks").

Even the examples of services that Moss's broader obligation allegedly included lack sufficient factual detail. On this point, the Court finds *Caro Capital, LLC v. Koch* instructive. That case concerned alleged oral agreements to provide "consulting services," but the counterclaim-plaintiffs there failed to plead "the nature or quantity of" those services. *Caro Cap., LLC v. Koch*, No. 20-cv-06153 (LJL), 2021 WL 1595843, at *7 (S.D.N.Y. Apr. 23, 2021), *modified on other grounds*, 2021 WL 2075481 (S.D.N.Y.). Indeed, the counterclaim-plaintiffs "fail[ed] to allege what actions [the consultants] were to take with respect to each of the alleged oral contracts, what goal they were supposed to accomplish, and how long they had to achieve that goal." *Id.* at *8. The counterclaim-plaintiffs also failed to provide any extrinsic standard to clarify what "consulting services" entailed, thus leaving the concept "entirely vacuous." *Id*. at *7. Standing alone, "[i]t could refer to an obligation to have a ten[-]minute conversation; it also could refer to an obligation to make oneself and a staff available on a 7-day a week 24-hours a day basis over a lengthy period of time to address any and all questions that may arise. It could refer to a vast array of work activities — some requiring more specialized knowledge than others . . . ." *Id.* As a result, the court held that the contract was unenforceable and dismissed the breach of contract claim. *Id.* at *8. The Court finds that *Caro Capital*'s logic applies when evaluating the nature of the services Plaintiffs have identified as examples of those Moss purportedly agreed to provide Brewshot: management, marketing, and branding.

As for management services, Plaintiffs first allege that Moss "started managing Brewshot" in April 2023 pursuant to a written independent contractor agreement. Compl. ¶ 20. To be the manager of a coffee shop might be a reasonably definite role — if not by Plaintiffs' pleadings, then at least by an extrinsic standard, *see Manager, Black's Law Dictionary* (12th ed. 2024) (defining "manager" as "someone who administers or supervises

the affairs of a business, office, or other organization") — but Plaintiffs next appear to allege that the parties' purported oral agreement changed the nature of Moss's role, such that in its wake she was no longer Brewshot's manager.  Compl. ¶ 21 (alleging that "[o]n or about June 2023, the parties discussed bringing Defendant Moss [on] as an equity shareholder of Brewshot *instead of manager* . . . ." (emphasis added)); *see* Compl. ¶ 26 (alleging that that the purported oral agreement voided the existing independent contractor agreement between Moss and Brewshot).  And in her new role, Moss would allegedly provide only "services . . . including, among others, management."  Compl. ¶ 24.  Plaintiffs do not allege the scope of these apparently new services.  *Cf. Puchalski v. FM Constr., Inc.*, No. 18-cv-01596 (SJB), 2020 WL 6727777, at *2, *4 (E.D.N.Y. Nov. 16, 2020) (finding oral agreement sufficiently pleaded, though details were "somewhat sparse," where plaintiff alleged "the work to be done (steamfitting) and the wage rate," and described that work as "assembl[ing], install[ing] and maintain[ing] steam and gas pipe systems, replac[ing] boilers and water heaters, paint[ing], shovel[ing] dirt, and assembl[ing] wood pieces in trenches").

    The Complaint is similarly unclear about the nature and extent of the marketing and branding services Moss was to provide Brewshot.  Like the consulting services allegedly promised in *Caro Capital*, these alleged services "could refer to a vast array of work activities," and, like the counterclaim-plaintiffs in that case, Plaintiffs here do not "allege what actions [Moss] [was] to take" in connection with them, "what goal [she was] supposed to accomplish, [or] how long [she] had to achieve that goal."  2021 WL 1595843, at *7-8.

    Plaintiffs have not cited to any case holding that oral agreements to provide "marketing services" or "branding services" are sufficiently definite.  The Court has found just one case pertaining, in part, to "marketing services" that could support such a view, but it is ultimately distinguishable.  In *Fort Productions, Inc. v. Men's Medical Clinic, LLC*, No. 15-

cv-00376 (NSR), 2016 WL 797577 (S.D.N.Y. Feb. 23, 2016), the court found that the plaintiff had adequately pleaded the existence of an agreement by alleging that "[d]efendant retained [p]laintiff for marketing and advertising services and that [d]efendant would pay the 'fair and reasonable value' for such services." *Id.* at \*3 (emphasis added).  In that case, however, the contract proponent was the marketing company, which alleged that it had provided the promised services to the defendant and at least identified, in its complaint, what market it had focused its efforts on and what some of the agreed-upon services were.  *See* Amended Complaint ¶ 2, *Fort Prods., Inc.*, 2016 WL 797577, ECF No. 3 (alleging that "a significant portion of the advertising efforts were directed to the New York City and suburban advertising markets and a sizeable portion of the unpaid debt relates to advertising purchased in said markets").  In other words, that complaint included some indication of the "actions [plaintiff] [was] to take" in connection with the parties' agreement and "what goal [it was] supposed to accomplish." *Caro Capital*, 2021 WL 1595843, at \*7-8.  Here, by contrast, Plaintiffs' pleadings provide no indication of what deliverables, if any, the purported agreement encompassed.  Moreover, in *Fort Productions*, marketing and advertising were the entirety of the allegedly promised services, *Fort Prods.*, 2016 WL 797577, at \*3, not examples from a "series of services" allegedly owed, Compl. ¶ 24.  That plaintiff also alleged a specific date on which the agreement was made, and a timeframe for its completion, *Fort Prods.*, 2016 WL 797577, at \*1, which Plaintiffs here do not.

Plaintiffs have not provided extrinsic standards for the Court's use in assessing, in the absence of any pleaded job duties, the definiteness of Moss's marketing and branding roles, and the extrinsic standards the Court has found do not aid the Court in that endeavor.  *See Marketing, Black's Law Dictionary* (12th ed. 2024) (defining marketing as "[t]he act or process of promoting and selling, leasing, or licensing products or services" and as "[t]he part

of a business concerned with meeting customers' needs"); *Branding, Merriam Webster*,

https://www.merriam-webster.com/dictionary/branding, [https://perma.cc/9U35-HQKL]

(defining branding as "the promoting of a product or service by identifying it with a particular

brand").  To be clear, these extrinsic standards are unhelpful not because they leave the terms

"marketing" and "branding" "entirely vacuous," *see Caro Capital*, 2021 WL 1595843, at *7,

but rather because they do not narrow the potentially vast scope of promotional

responsibilities Moss could have promised in connection with these alleged roles.  *Cf. Streit v.*

*Bushnell*, 424 F. Supp. 2d 633, 636 (S.D.N.Y. 2006) (existence of oral agreement adequately

pleaded where plaintiff promised to "sell and promote" defendant's "work and career

including . . . the production of [her] book . . . as a television series" (quotation marks and

citation omitted)); *Elhanani v. Kuzinez*, 101 N.Y.S.3d 307, 308-309 (App. Div. 2019)

(existence of oral agreement adequately pleaded where real estate broker agreed, among other

things, "to promote" certain apartment units, specifically by "partnering with a national real

estate sales and marketing agency approved by the defendants").

     Even if marketing and branding services were reasonably definite, the Court has

already found that "management services" is not.  More importantly, these services were only

part of the nebulous "series of services" that Moss allegedly agreed to provide.  Thus, the

alleged oral agreement to provide these services is far too vague to support the existence of a

contract between her and Brewshot.  And "New York law requires that 'an agreement [be]

reasonably certain in its material terms,' not just some of its material terms." *Caro Capital*,

2021 WL 1595843, at *7 (quoting *Cobble Hill*, 548 N.E.2d at 206); *see Cobble Hill*, 548

N.E.2d at 206 ("[U]nless a court can determine what the agreement is, it cannot know whether

the contract has been breached, and it cannot fashion a proper remedy.").  The Court finds,

therefore, that these allegedly promised services are too vague and indefinite to give rise to a legally enforceable agreement.

The sole authority Plaintiffs cite on the existence of enforceable agreements, *Kolchins v. Evolution Markets, Inc.*, *see* Opp. at 3, does not alter any of the foregoing analysis. In *Kolchins*, the court found that emails between the parties, in which both agreed to continue to be bound by the same terms of their existing written agreement, were sufficiently definite to establish a binding agreement. *Kolchins v. Evolution Mkts., Inc.*, 96 N.E.3d 784, 788-89 (N.Y. 2018). The facts alleged by Plaintiffs here bear no resemblance to that case.

In addition, here the Complaint fails to clearly allege who negotiated the alleged agreement on Brewshot's behalf or where Brewshot and Moss entered into it, which further supports the Court's finding that Plaintiffs have inadequately pleaded the existence of an agreement. *See Prestige Brands, Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441, 446 (S.D.N.Y. 2013) (dismissing breach of contract claim where plaintiff "pleaded no specific facts . . . identify[ing] (1) the individuals who negotiated and entered into the agreement[,] (2) the specific terms of the agreement[,] or (3) when and where the agreement was made"). Therefore, the Court finds that Plaintiffs have insufficiently pleaded that an agreement existed between Brewshot and Moss.

Even if the pleadings sufficiently established the existence of an agreement with Moss, Brewshot's breach of contract claim would still fail, because Plaintiffs have inadequately pleaded a breach. Indeed, there is no clear allegation of which services — management, marketing, branding, or one of the undefined other services — Moss failed to provide. *See* Compl. ¶ 47 (alleging Moss breached the parties' contract "by failing to deliver the agreed-upon services"). Moreover, although Plaintiffs allege that Moss additionally breached their agreement "by refusing to pay back the advance," *id.*, they nowhere allege that the terms of

Brewshot's agreement with Moss required her to make that repayment upon her departure. Rather, Plaintiffs allege the oral agreement required Moss to repay the advance once Brewshot became profitable.  Compl.  ¶ 28.  There is no allegation in the Complaint that this condition precedent ever occurred, and "[i]t is rudimentary that a plaintiff cannot state a claim for a breach of contract where the defendant's time to perform has not passed."  *Exchange Listing*, 661 F. Supp. at 144; *see Brenner v. Brenner*, 821 F. Supp. 2d 533, 539 (E.D.N.Y. 2011) (dismissing breach of contract claim where plaintiffs had guaranteed defendant's loan, and defendant promised to indemnify plaintiffs in the event of his default or a related foreclosure on plaintiffs' collateral, but "plaintiffs d[id] not allege the occurrence of either of th[ose] conditions").  Nor is there any allegation that Moss and Brewshot agreed that Moss would continue in her role until Brewshot became profitable, such that her "decid[ing] to go to school [in] Colorado" before that outcome would constitute a breach.  Compl. ¶ 33.

Therefore, the Court finds that Plaintiffs have failed to plead the existence of an enforceable agreement between Brewshot and Moss and, even if that pleading were adequate, have failed to plead a breach of that agreement.  The Court dismisses the breach of contract claim.

## IV.    Breach of Covenant of Good Faith and Fair Dealing

Defendants next argue that Brewshot's claim for breach of the implied covenant of good faith and fair dealing, *see* Compl. ¶¶ 49-52, should be dismissed because it is "based on the same facts" as, and therefore duplicative of, Brewshot's breach of contract claim.  Br. at 9-10; Reply at 5-8.  Plaintiffs contend that the claims are independent, because Moss's alleged failure to "fulfil[l] [her] obligations and provide the agreed upon services under the oral contract before moving to Colorado, especially after [she] accepted thousands of dollars as

[an] advance against distributions . . . goes beyond mere breach and constitutes bad faith."
Opp. at 4.  The Court agrees with Defendants.

Generally, "[t]wo claims are duplicative of one another if they arise from the same
facts . . . and do not allege distinct damages." *Lavazza Premium Coffees Corp. v. Prime Line
Distribs. Inc*., 575 F. Supp. 3d 445, 470 (S.D.N.Y. 2021) (omission in original) (quoting
*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)).  Put
another way, duplicative "claims rise and fall together," *Doe v. Indyke*, 465 F. Supp. 3d 452,
459 (S.D.N.Y. 2020).  In New York, "all contracts contain an implied covenant of good faith
and fair dealing in the course of contract performance." *Pearce v. Manhattan Ensemble
Theater, Inc.*, 528 F. Supp. 2d 175, 180 (S.D.N.Y. 2007).  For that reason, a breach of the
implied covenant is "merely a breach of the underlying contract." *Cruz v. FXDirectDealer,
LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*,
310 F.3d 73, 80 (2d Cir. 2002)); *accord L'Amore Consulting LLC v. SBS Servs., Inc.*, No. 23-
cv-08475 (NSR), 2024 WL 3925953, at *5 (S.D.N.Y. Aug. 23, 2024).  Accordingly, where a
plaintiff sues in New York for both breach of contract and breach of the implied covenant of
good faith and fair dealing, and bases those two claims on the same facts, the latter claim is
"redundant" and should be dismissed. *Cruz,* 720 F.3d at 125.  That is what Plaintiffs have
done here.

Both of Brewshot's contract claims rely on the same set of facts, namely that Moss left
for Colorado without providing "agreed-upon services" or repaying the equity distribution
Brewshot had advanced to her. *Compare* Compl. ¶ 47 (alleging Moss breached the parties'
contract "by failing to deliver the agreed-upon services or refusing to pay back the advance")
*and* Compl. ¶ 51 (alleging Moss breached the implied covenant by "failing to discharge [her]
obligations in good faith as promised despite ample opportunity to do so; and, by failing to

deliver to Brewshot the services promised"); *see also* Opp. at 5 (describing breach of implied covenant claim as "alleg[ing] that [Moss] accepted tens of thousands of dollars in advances and then unilaterally abandoned [her] role, leaving [Plaintiffs] financially and operationally impaired"). That shared factual basis makes the claims duplicative, and Plaintiffs' attempt to characterize Moss's conduct as "bad faith" for the sake of Brewshot's implied covenant claim is insufficient. *See CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) ("When 'the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract,' the two claims are duplicative." (quoting *In re Houbigant, Inc.*, 914 F. Supp. 964, 989 (S.D.N.Y. 1995))), *aff'd* 328 F. App'x 56 (2d Cir. 2009) (summary order); *cf. FD Special Opportunities V, LLC v. Silver Arch Cap. Partners, LLC*, No. 21-cv-0797 (VM), 2021 WL 9564405, at *4 (S.D.N.Y. July 27, 2021) (finding claims not duplicative where plaintiff alleged that defendant breached contract by failing to repay loan deposits after loan transaction fell through, and that defendant breached implied covenant by "fabricating concerns to prevent or delay the transaction").

Therefore, the Court finds that the claim for breach of the implied covenant of good faith and fair dealing is duplicative of the claim for breach of contract, and the Court dismisses it.

## V.    Unjust Enrichment

Having dismissed Brewshot's contract claims, the Court now turns to its "quasi-contract" claim for unjust enrichment. *See Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) ("[T]he theory of unjust enrichment lies as a quasi-contract claim."). A plaintiff adequately pleads a claim for unjust enrichment by alleging that "(1) the other party was enriched, (2) at th[e] [plaintiff]'s expense, and (3) that it is against equity and good

conscience to permit the other party to retain what is sought to be recovered." *Colon v. Pina*, No. 24-cv-05381 (JLR), 2025 WL 2207756, at *7 (S.D.N.Y. Aug. 4, 2025) (quoting *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024)).

Defendants assert three reasons that Brewshot's unjust enrichment claim must be dismissed. First, citing the two written agreements that the Court has disregarded, Defendants argue that "Plaintiffs have acknowledged the existence of an agreement and the mutual assent to its terms," Br. at 13, and quasi-contracts exist only in the absence of a valid agreement, Br. at 12. Second, citing Moss's LLC bank records that the Court has disregarded, Defendants argue that Brewshot never actually paid Moss an advance on her equity distributions. Br. at 13. And third, Defendants argue that Brewshot's unjust enrichment claims are duplicative of its breach of contract claims. Reply at 8-10. For their part, Plaintiffs contend that they pleaded Brewshot's unjust enrichment claim in the alternative, and that "if the oral agreement is deemed unenforceable, Moss's retention of advance payments without rendering services constitutes unjust enrichment." Opp. at 5.

The Court sets aside Defendants' first two arguments, because both rely on extrinsic documents that the Court has disregarded,[3] and disagrees with the third. Plaintiffs are permitted to plead unjust enrichment in the alternative to Brewshot's breach of contract claim, given that Defendants dispute the existence of the alleged oral agreement. *See Colon*, 2025 WL 2207756, at *7 (allowing "Plaintiff to plead unjust enrichment in the alternative to his breach of contract claim" where "there is a dispute concerning the existence of the contract"

---

[3] In any event those arguments would fail because, as the Court noted previously, Plaintiffs' claims do not arise from the original, written independent contractor agreements but instead from a purported oral agreement.

(alterations adopted) (quoting *Mackenzie v. Waypointe Partners Mgmt. LLC*, No. 22-cv-07951 (VSB), 2025 WL 388296, at *6 (S.D.N.Y. Feb. 4, 2025))).

Nevertheless, the Court dismisses Brewshot's alternative unjust enrichment claim because it is inadequately pleaded. Plaintiffs assert that Moss took "tens of thousands of dollars as advance against distributions . . . without delivering the service [she] promised," and from that assertion Plaintiffs draw two conclusions: first, that "Defendants have been enriched or have benefitted to Brewshot's detriment"; second, that "[i]t would be unjust, against equity and good conscience to permit the Defendants to retain, among other benefits, the tens of thousands of dollars." Compl. ¶¶ 54-55. The Court finds both conclusions inadequately supported by factual allegations.

First, for the same reason that Plaintiffs have not sufficiently pleaded breach, Plaintiffs have not sufficiently pleaded that Moss has been enriched at Brewshot's expense. The Complaint insufficiently states what services Moss allegedly failed to provide, and it fails to allege how Moss was enriched by retaining an advance that Plaintiffs themselves state she was entitled to keep until Brewshot became profitable, a triggering event that Plaintiffs do not allege occurred before (or even after) her departure. *See Robinson v. MSG Entertainment Grp., LLC*, No. 23-cv-09366 (LJL), 2025 WL 1883597, at *6 (S.D.N.Y. July 8, 2025) (dismissing employer's unjust enrichment claim where "the reasonable value of the benefits [employer] provided to [employee] is equivalent to labor [employee] provided for [employer] in exchange for those benefits . . . [such that] there is no imbalance meriting recovery or restitution") (internal quotations omitted).

Second, even if Plaintiffs had adequately pleaded an enrichment, Plaintiffs' pleadings omit any facts demonstrating *why* Moss's retention of the alleged benefits would offend equity and good conscience given that she was provided with an advance that, as pleaded in

the Complaint, must only be repaid upon an event that has not yet occurred.  That omission, alone, is fatal to their unjust enrichment claim.  *See, e.g.*, *RBG Mgmt. Corp. v. Village Super Market, Inc.*, 692 F. Supp. 3d 135, 155 (S.D.N.Y. 2023) (collecting cases, and dismissing unjust enrichment claim where plaintiff "only conclusorily alleged that it would be against equity and good conscience" to permit defendant to retain certain benefit but "failed to allege why" (alteration adopted) (internal quotations and citation omitted)).

Therefore, the Court dismisses Brewshot's unjust enrichment claim.

## VI.    Tortious Interference with a Contract

A plaintiff alleging tortious interference with contract must plead "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) 'the defendant's knowledge of that contract'; (3) 'the defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; . . . (5) 'damages resulting therefrom.'"  *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 152 (S.D.N.Y. 2022) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006)).  The fourth prong, breach, requires the plaintiff to "identify what provisions of the contract were breached as a result of the acts at issue," *id.* (quoting *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 450 (S.D.N.Y. 2014))), and to plead that "the contract would not have been breached but for the defendant's conduct," *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 343 (2d Cir. 2024) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 127 (2d Cir. 2019)).

Defendants argue that Jersey Social's tortious interference claim fails because Plaintiffs have not "pointed to any specific provisions of these contracts that they claim were violated," Br. at 14, and because Moss directly supervised Jersey Social employees and therefore was not a third-party "to the employment contracts in question," Reply at 14.

Plaintiffs ignore these arguments entirely.  Instead, for reasons unclear to the Court, they recite the elements of tortious interference with a prospective economic advantage — which is not a claim in the Complaint — and argue they have adequately pleaded those elements.  Opp. at 6.  The Court agrees with Defendants.

Although Plaintiffs allege that Jersey Social "had an employment contract with its employees," Compl. ¶¶ 35, 58, and that Moss "intentionally and maliciously interfered with those contracts," Compl. ¶ 60, they do not state what terms of those contracts Moss induced the employees to breach — rather, they allege that the employees "resigned and/or were terminated" at Moss's instigation, Compl. ¶ 39, without explaining how those actions represent a breach of the employees' contracts.  That, alone, is fatal to Jersey Social's tortious interference claim.  *See Kirch*, 449 F.3d at 402 (affirming dismissal of tortious interference claim where plaintiff alleged defendant "walked away" from the parties' agreement but "[n]owhere . . . assert[ed] that [defendant] . . . violated the terms of a contract with [plaintiff] when it did so"); *Henry*, 629 F. Supp. 3d at 140-41, 152-53 (dismissing tortious interference claim where plaintiff alleged merely that his employer's chief executive officer "caused [the employer] to breach [p]laintiff's employment agreement by terminating him without cause" but "failed to" "identify what provisions of the contract were breached as a result of the acts at issue" (internal quotation marks omitted)).

Accordingly, Plaintiffs have not adequately pleaded a claim for tortious interference, and the Court dismisses the claim.  The Court will not address whether Plaintiffs' allegations are sufficient to state a claim for tortious interference with a prospective economic advantage, as Plaintiffs have not brought that claim against Defendants.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss based on *forum non conveniens* grounds is DENIED, but their motion to dismiss for failure to state a claim is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. 17 and close the case.

Dated: October 15, 2025
       New York, New York

                                    SO ORDERED.


                                    _Jennifer Rochon_____
                                    JENNIFER L. ROCHON
                                    United States District Judge

33